ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| First Street Contractors, LLC | ) ASBCA No. 64028 |
| | ) |
| Under Contract No. W912P6-20-C-0021 | ) |

APPEARANCES FOR THE APPELLANT: Jonathan R. Neri, Esq.
　　　　　　　　　　　　　　　　Lauren R. Brier, Esq.
　　　　　　　　　　　　　　　　Josephine R. Farinelli, Esq.
　　　　　　　　　　　　　　　　　PilieroMazza PLLC
　　　　　　　　　　　　　　　　　Washington, DC

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
　　　　　　　　　　　　　　　　　Engineer Chief Trial Attorney
　　　　　　　　　　　　　　　　Ian T. McDaniel
　　　　　　　　　　　　　　　　　Engineer Trial Attorney
　　　　　　　　　　　　　　　　　U.S. Army Engineer District, Chicago

OPINION BY ADMINISTRATIVE JUDGE SWEET

On March 20, 2026, the government filed a motion for reconsideration of our denial of its motion for summary judgment in *First Street Contractors, LLC*, ASBCA No. 64028, 26-1 BCA ¶ 39,004 (*First Street I*).[*]  In its motion for reconsideration, the government argues that *First Street I* erred by:  (1) relying upon an annotated Drawing Sheet M-6 in the government's summary judgment motion reply brief (Annotated Drawing); and (2) purportedly asserting in footnote 4 that the government agreed in its summary judgment motion that there was a material variation between the expected and the encountered conditions (gov't mot. for recon. at 3-4).  In its motion for reconsideration reply brief, the government also argues that *First Street I* erred by failing to analyze whether there was a patent ambiguity (gov't mot. for recon. reply at 6).  As discussed in greater detail below, the government waived the first and last arguments.  In any event, none of the government's arguments satisfy its burden for establishing entitlement to reconsideration.

I.　Motion for Reconsideration Standard

A motion for reconsideration is only appropriate if it is based upon newly discovered evidence, mistakes in the findings of fact, or errors of law.  *Green Valley Co.*, ASBCA No. 61275, 18-1 BCA ¶ 37,044 at 180,330 (citing *Alliance Roofing & Sheet Metal, Inc.*, ASBCA No. 59663, 15-1 BCA ¶ 36,063).  "Motions for

---

[*] We presume familiarity with *First Street* I.

reconsideration do not afford litigants the opportunity to take a 'second bite at the apple' or to advance arguments that properly should have been presented in an earlier proceeding." *Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014) (citations and quotations omitted). As a result, in our discretion, we may find that an argument not raised earlier in a proceeding has been waived. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990).

## II. The Government Waived its Arguments that *First Street I*'s Reliance Upon the Annotated Drawing Was an Error, Which, in any Event, Are Meritless

The government raises two arguments in support of its assertion that *First Street I*'s reliance upon the Annotated Drawing was erroneous, both of which have been waived and, in any event, are meritless. The government first argues that Drawing Sheet M-6 did not depict the concrete floor openings at all, and that the Annotated Drawing merely showed where the existing concrete floor openings should be located (gov't mot. for recon. at 3; gov't mot. for recon. reply at 2-4). As an initial matter, that is a new argument that the government waived by failing to raise during its summary judgment briefing (gov't summ. j. reply); *see Dixon*, 741 F.3d at 1378; *Becton Dickinson*, 922 F.2d at 800. Indeed, that new argument is inconsistent with the arguments that the government raised in its summary judgment briefing. In particular, the government's new argument that the Drawing Sheet M-6 did not show concrete floor openings is inconsistent with the government's assertion in its summary judgment motion that "Drawing Sheet M-6 . . . provides a section view of the [wastewater treatment plant] pump room, depicting the positions of the [Smith & Loveless, Inc.] Grit Pumps and the concrete floor openings" (gov't summ. j. mot. at 11, ¶ 14). Likewise, the government's summary judgment motion reply brief did not state that the Annotated Drawing highlighting indicated where the existing concrete openings "should be located" (gov't mot. for recon. at 3); it stated that the highlighting indicated "where the existing concrete openings <u>are</u> located (highlighted) in Drawing Sheet M-6" (gov't summ. j. reply at 2 (emphasis added)).

In any event, the government's new argument that Drawing Sheet M-6 did not depict concrete floor openings at all merely would contribute to the factual dispute as to whether First Street's interpretation of Drawing Sheet M-6 as showing existing concrete floor openings that were larger than the Grit Pumps was reasonable; it would not resolve that dispute. Thus, that new argument would not establish that *First Street I* erred when it held that there are genuine issues of material fact as to whether First Street reasonably interpreted and relied upon Drawing Sheet M-6. 26-1 BCA ¶ 39,004 at 189,937-38.

Second, in its reply brief on its motion for reconsideration, the government also argues that the Board mistook the Annotated Drawing for part of the Contract, and that the Annotated Drawing did not modify Drawing Sheet M-6 (gov't mot. recon. reply

at 2, 4-5).  As an initial matter, the government waived that argument by failing to raise it in its motion for reconsideration opening brief (gov't mot. recon.).  *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002); *Buck Town Contractors, Co.*, ASBCA No. 60939, 18-1 BCA ¶ 36,951 at 180,059.  In any event, the argument is meritless.  Nowhere in the Concrete Floor Openings Claim Statement of Facts did *First Street I* find that the Annotated Drawing was part of, or modified, Drawing Sheet M-6.  26-1 BCA ¶ 39,004, at 189,933-35.  Rather, in the Concrete Floor Openings Claim Discussion, *First Street I* relied upon the Annotated Drawing as a party admission regarding what Drawing Sheet M-6 showed.  *Id*. at 189,937.  That is an acceptable use of an attorney's statement.  *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1312 (Fed. Cir. 2007).  Thus, the government has failed to show that *First Street I*'s reliance upon the Annotated Drawing was erroneous based upon newly discovered evidence, involved a mistake in the findings of fact, or involved an error of law.

III. The Government's Argument That *First Street I* Erred by Purportedly Asserting That the Government Agreed That There Was A Material Variation Between the Expected and the Encountered Conditions Is Meritless

Also meritless is the government's challenge to *First Street I*'s alleged assertion in footnote 4 that the government agreed in its summary judgment motion that there was a material variation between the expected condition of concrete floor openings that were larger than the Grit Pumps and the encountered conditions of concrete floor openings that were smaller than the Grit Pumps (gov't mot. for recon. at 4).  In particular, the government argues that it did not agree in its summary judgment motion that the expected condition included concrete floor openings that were larger than the Grit Pumps because its summary judgment motion asserted that Drawing Sheet M-6—which First Street argued showed the expected conditions—depicted the effort's post-installation results instead of the pre-installation expectation of existing conditions (*id*.).  However, *First Street I* acknowledged the government's argument that Drawing Sheet M-6 depicted the effort's post-installation results instead of the pre-installation expectation of existing conditions, holding that there was a genuine issue of material fact as to that issue.  26-1 BCA ¶ 39,004 at 189,937 ("On the one hand, as the Corps argues (gov't [summ. j.]  reply at 3-4), it is reasonable to infer from the fact that Drawing Sheet M-6 is entitled 'NEW WORK' that it merely depicted the Corps' expectations of the project's post-installation results . . . .").

*First Street I*'s footnote 4 also acknowledged the parties' dispute regarding whether the expected conditions included concrete floor openings that were larger than the Grit Pumps by referring to the "alleged indication that the existing concrete floor openings were larger than the Grit Pumps."  *Id*. at 189,943 n.4 (emphasis added).  The motion for reconsideration simply ignores footnote 4's use of the word "alleged" to

qualify the phrase "indication that the existing concrete floor openings were larger than the Grit Pumps" (gov't mot. for recon. at 4). Footnote 4 merely noted the lack of a dispute as to whether that alleged existing condition materially differed from the conditions encountered of existing concrete floor openings that were smaller than the Grit Pumps. *First Street*, 26-1 BCA ¶ 39,004 at 189,937 n.4. Because the government has failed to show that its summary judgment motion argued that the alleged indication that the existing concrete floor openings were larger than the Grit Pumps did not materially differ from the condition encountered of concrete floor openings that were smaller than the Grit Pumps (*id.*), the government has failed to show that footnote 4 erred in its characterization of the argument in the government's summary judgment motion.

IV. The Government Waived Its Patent Ambiguity Argument, Which, in any Event, Is Meritless

The government waived its patent ambiguity argument, which, in any event, is meritless. In its motion for reconsideration reply brief, the government argues that the Board erred as a matter of law in failing to decide whether any ambiguity was patent because, under *Korte Constr. Co.*, ASBCA No. 63148, 23-1 BCA ¶ 38,454 at 186,909 (quoting *Newsom v. United States*, 676 F.2d 647, 650 (Ct. Cl. 1982)), the:

> existence of a patent ambiguity in itself raises the duty of inquiry, regardless of the reasonableness vel non of the contractor's interpretation. . . . The court may not consider the reasonableness of the contractor's interpretation, if at all, until it has determined that a patent ambiguity did not exist.

(Gov't reply mot. recon. at 6) As an initial matter, the government waived that argument by failing to raise it in its motion for reconsideration opening brief (gov't mot. recon.); *Novosteel*, 284 F.3d at 1274; *Buck Town Contractors*, 18-1 BCA ¶ 36,951 at 180,059.

In any event, the argument is meritless because the government's reliance upon *Newsom* and *Korte* ignores the fact that the reasonableness of a contractor's interpretation of contract language is a factor we consider in both determining whether there is an ambiguity in the first place, and whether that ambiguity is patent—which we only analyze if we determine that there was an ambiguity. First, as we correctly held in *First Street I*, the Board considers the reasonableness of a contractor's interpretation in deciding whether a contract is ambiguous. 26-1 BCA ¶ 39,004 at 189,936. Indeed, *Korte* acknowledged that we must analyze whether a contractor's interpretation of a contract is reasonable in deciding if it is ambiguous. 23-1 BCA ¶ 38,454 at 186,908. Second, as *Newsom* held, the patent ambiguity analysis contains

4

two steps—namely whether an ambiguity is patent and, if not, whether the contractor's interpretation was reasonable. 676 F.2d at 650.

*Newsom* merely held that a tribunal will not conduct the second step of the patent ambiguity analysis of determining the reasonableness of the contractor's interpretation until after it has determined that the ambiguity was not patent under the first step. 676 F.2d at 650. *Newsom* did not analyze whether the contract was ambiguous in the first place, and, as a result, did not hold that we may not conduct the reasonableness inquiry that we perform as part of that ambiguity determination before we determine whether any ambiguity is patent. *Id.* Indeed, such a reading of *Newsom* would contradict the well-established precedent that we must determine whether a contract is ambiguous <u>before</u> we analyze whether any ambiguity is patent, *see Grumman Data Sys., Corp. v. Dalton*, 88 F.3d 990, 997 (1996); *Interwest Const. v. Brown*, 29 F.3d 611, 614-15 (1994), and that that analysis of whether a contract is ambiguous includes a consideration of the reasonableness of a contractor's interpretation. *CDM Constructors, Inc.,* ASBCA No. 60454 *et al.*, 18-1 BCA ¶ 37,190, at 181,012 (quoting *E.L. Hamm & Assocs., Inc. v. England*, 379 F.3d 1334, 1341 (Fed. Cir. 2004); *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004); *Hol-Gar Mfg. Corp. v. United States*, 351 F.2d 972, 975 (Ct. Cl. 1965)). In fact, it would be a logical impossibility to determine that an ambiguity was patent before we first decided that there was an ambiguity. Because there is a genuine issue of material fact as to whether the Contract is ambiguous based upon a genuine dispute regarding if First Street's interpretation of the Contract is reasonable, *First Street I* properly declined to reach the subsequent question of whether any ambiguity was patent in deciding the cross-motions for summary judgment. 26-1 BCA ¶ 39,004 at 189,936-37.

<u>CONCLUSION</u>

For the reasons discussed above, we deny the government's motion for reconsideration.

Dated: June 10, 2026

JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

5

I concur                                          I concur


_____          _____
J. REID PROUTY                                    MICHAEL N. O'CONNELL
Administrative Judge                              Administrative Judge
Acting Chairman                                   Vice Chairman
Armed Services Board                              Armed Services Board
of Contract Appeals                               of Contract Appeals



I certify that the foregoing is a true copy of the Opinion and Decision of the
Armed Services Board of Contract Appeals in ASBCA No. 64028, Appeal of First Street
Contractors, LLC, rendered in conformance with the Board's Charter.

Dated: June 10, 2026


_____
PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals